IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RONDELL L. WEBB,

    Petitioner,                      No. CIV 05-0291 RRB GGH P

    vs.

SCOTT KERNAN, Warden,          FINDINGS AND RECOMMENDATIONS

    Respondent.

_____/

Introduction

    Petitioner, a state prisoner proceeding pro se, has filed a petition pursuant to 28 U.S.C. § 2254. Petitioner, following a plea of guilty to first degree murder, was sentenced to a term of 25 years to life on March 28, 1980, in Alameda County Superior Court, with a two-year sentence for firearm use stayed. Abstract of Judgment. Petitioner challenges his October 10, 2001, three-year parole denial at a hearing before a panel of the Board of Prison Terms (now Board of Parole Hearings and hereafter identified as BPH). Pending before the court is respondent's June 20, 2007, motion to dismiss, to which petitioner filed an opposition.

\\\\\

\\\\\

\\\\\

1

Background

On February 14, 2005,[1] petitioner filed an original petition, which was dismissed with leave to amend. See Order, filed on 3/01/05. His first amended petition, filed on April 7, 2005,[2] raised the following grounds: 1) denied petitioner's constitutional right to have his prison term fixed and release date established when the BPH failed to apply Cal. Penal Code § 3041(a), denied him parole for three years and a fixed term and failed to compare his crime to other similar offenses; 2) denied constitutional right to have his prison term fixed and release date established when the BPH panel failed to consider all relevant evidence and to uphold the terms of his plea agreement set forth by the sentencing court; 3) denied his constitutional right to have his length of confinement calculated under the Indeterminate Sentencing Law (ISL) and the Determinate Sentencing Law (DSL), when the BPH panel failed to conduct a proportionality analysis and base its findings and decision on offenses of similar gravity and magnitude; 4) petitioner's constitutional right was violated when the BPH panel used a second homicide claim in their findings and decision to deny him parole and a fixed term, and the right for such a claim to be presented to and heard by a jury.

Respondent filed a motion to dismiss the petition alleging that petitioner's petition was untimely under the AEDPA's one-year statute of limitations and also alleged that petitioner had only exhausted state judicial remedies concerning his claim that the Board failed to conduct a proportionality analysis. The undersigned issued findings and recommendations in which the petition was found to be timely and that petitioner had only exhausted state court remedies with

---

[1] Although the petition was stamped by the court as filed on February 14, 2005, petitioner's pro se petition's proof of service was signed and dated February 2, 2005. The court will afford petitioner the application of the mailbox rule, whereby, pursuant to Houston v. Lack, 487 U.S. 266, 275-76, 108 S. Ct. 2379, 2385 (1988), a pro se prisoner filing is dated from the date prisoner delivers it to prison authorities.

[2] By application of the mailbox rule, the petition would be deemed filed as of March 30, 2005, but, in the context of a motion to dismiss on, inter alia, grounds of untimeliness, it is only the original filing date that is significant.

1 respect to claim 3.  See Findings and Recommendations, filed on January 24, 2006.  The court
2 recommended denial of respondent's motion to dismiss and that the case be stayed pending
3 exhaustion of claims 1, 2 and 4.  Id.

4 Upon respondent's objections to the Findings and Recommendations, the district
5 judge noted that therein respondent sought to have the amended petition dismissed "on grounds
6 or arguments not originally set forth in its motion."  Order, filed on 3/17/06, p. 1.  Noting that it
7 was improper for respondent to "raise new grounds and frame arguments not advanced in the
8 motion," the court nevertheless did not "wish to determine whether this action should be
9 dismissed or not on the basis of a motion in which each ground has not been appropriately
10 raised."  Id. at 2.  The court therefore vacated respondent's May 12, 2005, motion to dismiss and
11 the January 24, 2006, Findings and Recommendations and directed respondent to file a motion to
12 dismiss incorporating each ground for dismissal.  Id. at 2-3.

13 Respondent's second motion to dismiss, filed on April 6, 2006, raised the
14 following grounds: 1) that the original petition was untimely because it was filed beyond the one-
15 year AEDPA statute of limitations; 2) that petitioner failed to exhaust state court remedies as to
16 certain of his claims; 3) that petitioner has received all the due process to which he was entitled;
17 4) claims 1 and 3 are state law claims and claim 2 is wholly without merit.  Order, filed on
18 3/13/07, citing second motion to dismiss.  This second motion was vacated by the March 13,
19 2007, Order, because in the interim petitioner had represented to the court that he had exhausted
20 all of his claims and sought leave to file a further amended petition.

21 <u>Final Amended Petition</u>

22 Petitioner filed a "final amended petition" on April 20, 2007.  Therein, petitioner
23 avers that his constitutional rights were violated by the October 10, 2001, three-year parole denial
24 when 1) he was denied the right to have his prison term fixed and his release date established
25 pursuant to Cal. Penal Code § 3041(a) when the BPH panel wrongfully based its denial on the
26 conclusion that petitioner posed an unreasonable threat to society, relying solely on the

3

commitment offense; 2) the BPH panel did not consider all relevant evidence by failing/refusing to review the terms of his plea contract; 3) the length of his prison term was not calculated under the ISL or the DSL when the BPH panel failed to conduct a proportionality analysis and base its findings/decision on offenses of similar gravity and magnitude; 4) the state and the BPH breached the terms of his plea agreement by recommending a longer sentence and not enforcing the terms of the plea; 5) dismissed counts were used after petitioner had entered his plea. Final Amended Petition (FP), pp. 4-24.

Motion to Dismiss

In respondent's third motion to dismiss, the following grounds are raised: 1) the instant petition is untimely because it was filed beyond the one-year AEDPA statute of limitations; 2) several of petitioner's claims are procedurally defaulted; 3) state court remedies have not been exhausted as to all claims; 4) several claims are either state law matters over which this court lacks jurisdiction or for which petitioner has not established a prima facie claim for relief. Motion to Dismiss (MTD), pp. 1-11.

*Statute of Limitations*

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act (AEDPA) was enacted. AEDPA amended 28 U.S.C. § 2244(d)(1) so that it now provides,

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

       (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

In this motion, as opposed to the initial motion, respondent does cite the accurate and applicable authority for the triggering event for the running of the AEPDA statute of limitations with respect to challenges to the decision of an administrative agency; respondent cites Redd v. McGrath, 343 F.3d 1077 (9th Cir. 2003) and Shelby v. Bartlett, 391 F.3d 1061 (9th Cir. 2004). MTD, pp. 4-5. The § 2244(d)(1)(D) limitation period for petitions that challenge administrative decisions "begins to run on 'the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.'" Shelby v. Bartlett, 391 F.3d 1061, 1066 (9th Cir. 2004), citing Redd v. McGrath, 343 F.3d 1077, 1082 (9th Cir. 2003). For habeas petitions challenging parole suitability hearings, the statute of limitations runs from the date the BPH denies the administrative appeal. Redd v. McGrath, 343 F.3d at 1082-1084 (9th Cir. 2003), citing 28 U.S.C. § 2244(d)(1)(D). The Shelby Court noted that in Redd, a challenge to a parole board's denial of an administrative appeal, it had found that the statute of limitations began running the day after that petitioner received notice of the Board's decision. However, respondent seeks to distinguish the facts of this case from those of the petitioner in Redd.

Respondent asserts that petitioner did not submit an administrative appeal of the BPH's decision until February 17, 2003, which was nearly two years after the October 10, 2001 decision. MTD, p. 5, Exhibit (Exh.) 1, pp. 119, 122. Petitioner explained therein that he was basing the appeal on a recent court ruling, In re Dannenberg, 102 Cal.App.4th 95, 125 Cal. Rptr.2d (Cal.App. 1st 2002),[3] which he contended entitled him to a proportionality analysis to fix his primary term which he had not received at the 2001 parole hearing. Id. The appeal was rejected as untimely, on March 25, 2003, because petitioner had failed to submit the appeal

---

[3] Since reversed by In re: Dannenberg, 34 Cal.4th 1061, 23 Cal. Rptr.3d 417 (Cal. 2005).

5

1  within 90 days of the 10/10/01 parole consideration hearing.  Id.  Thereafter, petitioner sought
2  reconsideration of the appeal, on April 15, 2003, informing the BPH that he had only learned of
3  the basis for making the appeal in the last week of January, 2003, and specifically quoting the
4  text of a "legal overview" which evidently relied on Dannenberg.  MTD, p. 5, Exh. 1, pp. 108-
5  111.  In a form dated May 5, 2003, the reason given for returning petitioner's follow-up request
6  to the BPH was as follows:[4]

> Appellate court ruling regarding In re Dannenberg is in response to
> a writ of habeas corpus filed by [Dan]nenberg.  The writ decision
> was exclusive to Dannenberg.  Your next parole consideration
> hearing will [be s]cheduled on or about 10/10/04.  This appeal is
> dismissed and no further appeals will be responded to [rega]rding
> this issue.

It is respondent's argument that the second response by the BPH was essentially a rejection on grounds of untimeliness because the appeal was not processed, indicating that the untimeliness of the initial appeal was thereby unexcused.  However, respondent does not explain the substantive response, which while the appeal may not have technically been processed, demonstrates that the merits were reached, as respondent essentially asserts in opposition.  Opposition (Opp.), p. 6.  Nor does the response to petitioner's request for reconsideration of the appeal indicate that timeliness, or lack thereof, had any bearing on that response.  Respondent also argues that the Dannenberg decision on which petitioner relied in filing his administrative appeal had been decided some five months earlier; however, this argument also fails because the BPH did ultimately reach the basis for the appeal.  Respondent contends that the time for filing his administrative appeal expired in early January, 2002 (90 days after the parole denial).  MTD, p. 6.

\\\\\
\\\\\

---

[4] The court has used bracket symbols [] around that portion of the text that is missing from the copy.

However, the court finds that the statute did not begin to run until the day after the May 5, 2003, denial.[5] Redd, supra, at 1084. The number of days that elapsed between the actual triggering date of May 5, 2003, denial and July 11, 2003, when the state court exhaustion period commenced with the filing of the state court petition in the superior court[6] was 66.

Although respondent does not set forth the dates that petitioner filed the remaining state court petitions predicated on the argument that the statute began to run in January, 2002, an argument that the undersigned rejects, the court will take judicial notice[7] of its findings in the January 24, 2006, Findings and Recommendations, pp. 4-5, wherein it was set forth that the initial state superior court petition was denied on August 11, 2003;[8] the December 15, 2003,[9] habeas petition filed in the state court of appeal was denied on December 24, 2003; and the state supreme court habeas petition, filed on February 2, 2004, was denied on December 15, 2004.[10] As noted the original petition in the instant case was filed on February 14, 2005.[11]

> Section 2244(d)(2) provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not

---

[5] The court had earlier found that the statute began to run from the day after March 25, 2003, but noted therein that the date of the second denial (or denial on reconsideration) could be construed as the appropriate date. See Findings and Recommendations, filed on 1/24/06, p. 6 & n. 4.

[6] MTD, p. 5, Exh. 1, p. 15.

[7] A court may take judicial notice of court records. See Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994); MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).

[8] See also, Exh. 1, to the present MTD, p. 129.

[9] See also, Exh. 1, to the present MTD, p. 8.

[10] See also, the present Opp., pp. 6-7, for the dates as set forth above.

[11] Although the petition was stamped by the court as filed on February 14, 2005, petitioner's pro se petition's proof of service was signed and dated February 2, 2005. The court could afford petitioner the benefit of the mailbox rule, whereby, pursuant to Houston v. Lack, 487 U.S. 266, 275-76, 108 S. Ct. 2379, 2385 (1988), a pro se prisoner filing is dated from the date prisoner delivers it to prison authorities, but it is not necessary in this instance.

> be counted toward any period of limitation. From the date of the filing of the initial petition, July 11, 2003, until the denial of petitioner's habeas petition in the state supreme court, on December 24, 2004, the one-year statute was tolled under § 2244(d)(2). See Carey v. Saffold, 536 U.S. 214, 122 S. Ct. 2134 (2002); see also Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999). A state petition is "pending" under § 2244(d)(2) if it is "a continuing 'application' for review and relief." Welch v. Carey, 350 F.3d 1079, 1082 (9th Cir. 2003) (en banc).

Id.

Petitioner's filing of his original petition in this court, on February 14, 2005, is timely because only 52 days elapsed between the date the decision was filed and the date petitioner's application was filed in this court and, with the addition of the 66 days that had elapsed prior to petitioner's first state court petition filing, the total amount of days that had run amounted to 118, leaving petitioner with 247 days before the statute of limitations would have run at the time of his filing the instant petition in this court. The petition was filed timely and, on this ground, respondent's motion on this ground should be denied.

*Procedural Default*

Respondent next argues that claims 1, 2, 4, and 5 are procedurally defaulted. MTD, pp. 6-8. The court will address respondent's argument as to claim 1 under the "Exhaustion" subsection.

However, respondent's contention that claims 2, 4 and 5 are defaulted is more colorable. In his second petition to the state supreme court, filed on February 28, 2006, during the pendency of the instant petition, petitioner set forth the following claims: 1) that he was denied his constitutional rights when the BPH referenced a second homicide at the hearing, even though the trial court had dismissed additional counts; petitioner also sandwiches in a claim that the state prosecutor breached petitioner's plea agreement by submitting letters from that office and the Oakland Police Dept. recommending that the BPH continue to deny him parole or a fixed term; 2) that the BPH failed to consider all relevant evidence before determining its decision and 3) that the BPH failed to uphold petitioner's plea agreement. MTD, pp. 6-8, Exh. 5, Docket

1  Entry (DE) # 35-3, pp. 9-41.  These claims are indeed embodied in the operative petition herein
2  as claims 2 (the BPH panel did not consider all relevant evidence by failing/refusing to review
3  the terms of his plea contract); 4 (the state and the BPH breached the terms of his plea agreement
4  by recommending a longer sentence and not enforcing the terms of the plea); and 5 (dismissed
5  counts were used after petitioner had entered his plea) herein.

6        As respondent correctly notes, in denying the petition the state supreme court
7  cited, in its October 25, 2006, denial the following cases:  In re Clark, 5 Cal.4th 750 (1993);
8  People v. Duvall, 9 Cal.4th 464, 474 (1995); In re Swain, 34 Cal.2d 300, 304 (1949); In re
9  Miller, 17 Cal.2d 734 (1941); In re Robbins, 18 Cal.4th 770, 780 (1998).  MTD, pp. 6-7, Exh. 5,
10 DE # 35-3, p. 43.

11       Federal courts will generally not review a question of federal law decided by a
12 state court if its decision rests on a state law ground that is independent of the federal question
13 and adequate to support the judgment.  See Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct.
14 2546 (1991).  For a state procedural rule to be independent, the state law basis for the decision
15 must not be interwoven with federal law.  LaCrosse v. Kernan, 244 F.3d 702, 704 (9th Cir.
16 2001).  To be deemed adequate, the state law ground for the decision must be well established
17 and consistently applied.  Poland v. Stewart, 169 F.3d 575, 577 (9th Cir. 1999).

18       In Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003), the Ninth Circuit held
19 that although the California untimeliness rules as expressed in In re Robbins was an independent
20 procedural ground, the court could not conclude that it was an adequate procedural ground on the
21 basis of the record before it.  The issue in the instant case is whether the timeliness/successive
22 petition rule of Clark is adequate.

23       Once the government has pleaded the existence of an independent and adequate
24 state procedural ground as an affirmative defense, as they have done in this case by contending
25 that the state supreme court has relied on the adequate and independent state procedural rule that
26 habeas petitioners may not bring successive petitions, that petitioners must raise all related

claims in an initial petition, and that the court relied on this ground by its citation to Clark. MTD, p. 7, citing 5 Cal. 4th at 769-70, the burden to place that defense in issue shifts to petitioner. Bennett v. Mueller, 322 F.3d 575, 586 (9th Cir. 2003). The petitioner may "satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of a state procedure, including citation to authority demonstrating inconsistent application of the rule." Id. The burden then shifts back to the government, and it bears the "ultimate burden of proving the adequacy" of the relied-upon ground. Id.

In King v. Lamarque, 464 F.3d 963, 968 (9th Cir. 2006) the Ninth Circuit held that simply contesting the adequacy of the California timeliness rule was sufficient to meet the petitioner's burden under Bennett because the Ninth Circuit has previously found the rule to be too ambiguous to bar federal review during the applicable time period. 464 F.3d at 966, citing Morales v. Calderon, 85 F.3d 1387, 1391 (9th Cir. 1996). However, petitioner herein, while he has sought to refute the untimeliness of the petition based on AEDPA and has argued that his claims are not based on state law, says nothing whatever about the adequacy of the California timeliness rule.

Thus, petitioner does not challenge the validity per se of the procedural bar in this case. This may well be because there can be no such showing in the circumstances and posture of the claims at issue that petitioner makes. Respondent contends that the Clark successive petition bar was clear, well-established and regularly applied before petitioner filed his first state court petition in 2003. MTD, p. 8. Petitioner does not address the issue at all and wholly fails to even meet the de minimis burden that King properly shifted to him. The court will recommend granting respondent's motion that claims 2, 4 and 5 are procedurally defaulted.

*Exhaustion*

The exhaustion of state court remedies is a prerequisite to the granting of a petition for writ of habeas corpus. 28 U.S.C. § 2254(b)(1). If exhaustion is to be waived, it must

\\\\\

be waived explicitly by respondent's counsel. 28 U.S.C. § 2254(b)(3).[12] A waiver of exhaustion, thus, may not be implied or inferred. A petitioner satisfies the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider all claims before presenting them to the federal court. Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir.), cert. denied, 478 U.S. 1021 (1986).

Claim 1 as set forth in the final amended petition is that petitioner was denied the right to have his prison term fixed and his release date established pursuant to Cal. Penal Code § 3041(a) when the BPH panel wrongfully based its denial on the conclusion that petitioner posed an unreasonable threat to society, relying solely on the commitment offense. As to claim 1, respondent has been confusing, initially stating that the sole claim petitioner raised in the first state supreme court petition was a claim that the BPH denied him the right to have his prison term fixed and release date established by state law when it wrongfully concluded that he posed a threat to society, then later contending that this same claim is either procedurally defaulted or unexhausted. MTD, pp. 6-8, & n. 8, Exh. 1, pp. 1-132. The initial state supreme court petition was filed on Feb. 2, 2004, and denied in a postcard denial without citation on December 15, 2004. Id. The court's review of this claim to the state supreme court shows that petitioner expressed it this way: "Petitioner went before the Board of Prison Terms on October 10, 2001, for parole consideration. The BPT panel denied parole and it failed to conduct [a] proportionality analysis using the matrix in Title 15 Div.2 and fix his [t]erm as required by law and the constitution, and their failure deprived him of due process of law." MTD, Exh. 1, DE #35-2, p. 19. His supporting argument focuses on the BPH panel's failure to comply with its alleged statutory responsibility to fix proportionate terms for similar crimes before determining that a petitioner is unsuitable for parole. In fact, petitioner notes that fixing a term may be delayed based upon "particular egregious crimes, or upon current criminal acts inconsistent with

---

[12] A petition may be denied on the merits without exhaustion of state court remedies. 28 U.S.C. § 2254(b)(2).

public safety." Id. at 20. He takes issue with a panel which denies parole based on a prisoner's version of the offense differing from that of the BPH panel, stating "[t]he controlling statute (P.C. § 3041(b)) speaks in terms of the gravity of an inmate's current or past offenses, not his credibility before the Board panel." Id. at 20-21. Petitioner in his opposition states that he is challenging the BPH October, 2001, three-year denial based on "its failure to apply guidelines, directives, statutes and laws to his case," averring that the BPH failed "to fix his term in accordance to Penal Code section 3041(a) which the legislature intended ...to apply to both determinate and indeterminate sentencing laws."[13] Opp., pp. 2-3. In supporting his claim 1 argument in the final amended petition, petitioner contends that he has a constitutionally protected liberty interest in a parole date. Opp., p. 4. The problem is, however, that petitioner does not appear to have raised any argument before the state supreme court speaking to his allegation that the three-year denial was based on the conclusion that he posed an unreasonable threat to society and that it relied solely on the committed offense, when he frames the only claim in his initial state court petition as one wherein the BPH failed to set a fixed term based on a proportionality analysis based on an interpretation of a state statute.[14] The court must recommend that respondent's motion to dismiss this claim as unexhausted be granted.

*State Law*

As to the only remaining claim, claim 3, respondent argues that this is a state law claim. MTD, p. 9. In claim 3, petitioner argues that the length of his prison term was not calculated under the ISL or the DSL when the BPH panel failed to conduct a proportionality

---

[13] This militates for a finding that claim 3 in both the first and final amended petitions has been exhausted, but not claim 1. See also, Findings and Recommendations, filed on 1/24/06, pp. 5-7.

[14] One of respondent's alternative grounds for dismissal, raised in a footnote MTD, note 2, is that claim 1 should be found procedurally defaulted because the claims of the second state supreme court petition were found to be so and petitioner did not embrace this claim in either the initial or second state supreme court petition, and the claims of the second state supreme court are procedurally defaulted as embodied in a successive petition. The court will not predicate its finding upon what the state supreme court might do in any speculative future state court petition.

12

analysis and base its findings/decision on offenses of similar gravity and magnitude.

A writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis of some transgression of federal law binding on the state courts. Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). It is unavailable for alleged error in the interpretation or application of state law. Middleton v. Cupp, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986). Habeas corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377, 92 S. Ct. 2174, 2178 (1972).

The Supreme Court has reiterated the standards of review for a federal habeas court. Estelle v. McGuire, 502 U.S. 62, 112 S. Ct. 475 (1991). In Estelle v. McGuire, the Supreme Court reversed the decision of the Court of Appeals for the Ninth Circuit, which had granted federal habeas relief. The Court held that the Ninth Circuit erred in concluding that the evidence was incorrectly admitted under state law since, "it is not the province of a federal habeas court to reexamine state court determinations on state law questions." Id. at 67-68, 112 S. Ct. at 480. The Court re-emphasized that "federal habeas corpus relief does not lie for error in state law." Id. at 67, 112 S. Ct. at 480, citing Lewis v. Jeffers, 497 U.S. 764, 110 S. Ct. 3092, 3102 (1990), and Pulley v. Harris, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75 (1984) (federal courts may not grant habeas relief where the sole ground presented involves a perceived error of state law, unless said error is so egregious as to amount to a violation of the Due Process or Equal Protection clauses of the Fourteenth Amendment).

Claim 3, whether meritorious or not, is an allegation that due process was violated (see discussion under "Exhaustion," above). Thus, it should not be dismissed as a state law claim.

*Claim Not Ripe*

Although the court has found that claim 3 should not be dismissed as a state law claim, under Rule 4 of the Rules Governing Section 2254 Cases in the United States District

Courts, the court must dismiss a claim when "it plainly appears from the petition...that the petitioner is not entitled to relief in the district court...." The court finds that claim 3 is one not entitled to relief in federal court. Under the ISL and the DSL, a life prisoner must first be found suitable for parole before a parole date is set. In re Stanworth, 33 Cal.3d 176, 183 (1982). Either the current commitment offense or the offense deemed most serious by the parole panel, in the even of multiple commitment of offenses, is then selected as the base offense. Id. The panel then sets a "base period of confinement," which under both systems is based solely on the gravity of the base offense. Id.

Under the ISL, suggested base ranges were established for each offense. Id. at 184. The range for first degree murder was set at 8 to 13 years. Id. Under the DSL, the base term "'shall be established by utilizing the appropriate matrix of base terms...for the base offense...'" Id., quoting Cal. Code Regs. tit. 15, § 2282(a). Under the DSL, the matrix for first degree murders provides four categories imposed on two separate axes, ranging from 8 to 22 years. Id.

The ISL and DSL both required that the prisoner be found suitable for parole before the base term was set. Id. Therefore, petitioner cannot raise a claim challenging the failure of the BPH to apply either the DSL or ISL base term guidelines until he is found suitable for parole, which is when his base term will be set. There is no claim in the final amended petition that petitioner has been found suitable for parole. Accordingly, this claim should be dismissed because petitioner's claim is not ripe.

Accordingly, IT IS HEREBY RECOMMENDED that respondent's June 20, 2007 (#35) motion to dismiss be granted and this case be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fifteen** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

1  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
2  shall be served and filed within ten days after service of the objections.  The parties are advised
3  that failure to file objections within the specified time may waive the right to appeal the District
4  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
5  DATED: 02/28/08

/s/ Gregory G. Hollows

_____
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
webb0291.mtd